IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HOPE ROMERO and
EMILIO ROMERO,

    Plaintiffs,
 vs.                 CIVIL NO. 10-298 JH/LFG

ROY CORDOVA and
EMERICK PADILLA,
in their individual capacities,

    Defendants.

## ORDER GRANTING LIMITED DISCOVERY
## AND SETTING DATE TO FILE AN AMENDED RESPONSE

  THIS MATTER is before the Court following a review of the Fed. R. Civ. P. 56(f) Affidavit of Alan Maestas, counsel for Plaintiffs.  Plaintiffs seek to engage in discovery in order to respond to Defendants' Motion for Summary Judgment on Basis of Qualified Immunity.

  Qualified immunity protects governmental employees who perform discretionary functions from liability as well as from the burdens of trial.  When a party asserts a defense of qualified immunity, the motion should be resolved as early as possible.  *See* Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985) (noting that one purpose of resolving qualified immunity early in the litigation is "to avoid subjecting government officials either to the costs of trial or to the burdens of broad-reaching discovery" (internal quotation marks and alteration omitted)).

  When a proper motion for qualified immunity is before the Court, discovery should be stayed.  Jiron v. City of Lakewood, 392 F.3d 410, 414 (10th Cir. 2004).  Otherwise, Defendants would lose the benefit of the defense by having to participate in the discovery process, including the burdens of trial.  *See* Cassady v. Goering, 567 F.3d 628, 634 (10th Cir. 2009) (observing that a ruling

on the qualified immunity issue should be made early in the proceedings so that the costs and expenses of discovery and trial are avoided) (*citing* Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151 (2001)).

However, a plaintiff may be permitted to conduct limited discovery on the issue of qualified immunity through a procedure addressed by the Tenth Circuit Court of Appeals in Ben Ezra, Weinstein, & Co., Inc.. v. America Online Inc., 206 F.3d 980, 987 (10th Cir. 2000. Ben Ezra instructs that when a party seeks limited discovery, the party may submit an affidavit advising what specific discovery is requested, and, more importantly, how the evidence adduced during that discovery will assist in overcoming defendant's *prima facie* showing of entitlement to judgment. If the Court concludes that a party has made an adequate showing under the requirements of Ben Ezra, it will allow limited discovery.

In this case, Defendants filed a motion for summary judgment based on qualified immunity [Doc. 21]; and Plaintiffs responded [Doc. 22]. In the response, Plaintiffs also requested discovery.[1]

In this case, Plaintiffs do not seek discovery limited to qualified immunity issues, but, rather, broad, free-wheeling discovery on virtually every aspect of the case. This is improper. If the Court were to permit this, it would violate Defendants' right to be free from the costs of discovery and burdens of trial., and, in effect, rob Defendants of their benefits pursuant to qualified immunity.

To determine what discovery, if any, is permitted to allow Plaintiffs to respond to Defendants' claim of qualified immunity, the Court first summarizes the basis of Defendants' motion; and then advises what discovery may be taken based on the requested discovery contained in Plaintiffs' response and affidavit.

---

[1] The request for discovery pursuant to Fed. R. Civ. P. 56 should not have been joined in the response. Rather, a separate pleading should have been filed. Administrative Order No. Misc. 92-88.

**<u>First Incident Involving Hope Romero</u>**

Plaintiffs sue Sheriff Roy Cordova and Deputy Emerick Padilla for allegedly violating their constitutional rights.  Sheriff Cordova, however, submits an affidavit advising that he had no involvement whatsoever as alleged in Plaintiffs' Complaint pertaining to Plaintiff Hope Romero and no recollection of ever dealing with Ms. Romero.

Ms. Romero's claim arises out of a law enforcement stop effected by Deputy Padilla, who was advised by police dispatch of a criminal investigation involving a homicide.  A suspect allegedly involved in the crime was a woman who was driving a blue-toned compact car.  The suspect was identified as Delilah Fresquez, who fled the scene near Rainsville, New Mexico, a small rural village located near Mora, New Mexico.  Dispatch requested Deputy Padilla's assistance in locating Fresquez who was believed to be in route to her home in Rainsville.

Padilla was patrolling various roads around Rainsville when he saw a vehicle driven by a woman matching the description.  He approached the vehicle with his emergency lights on and pulled the vehicle over.  The driver had children in the backseat of the dark-colored car.  Padilla asked the driver, who was subsequently identified as Hope Romero, to exit the car.  The deputy alleged that Ms. Romero became unruly and combative, and, for his own safety, he handcuffed her and placed her in the rear seat of his car so that he could determine her identity.  When Ms. Romero agreed to remain calm, Padilla removed the handcuffs, inspected her driver's license, and ascertained that she was not the suspect Delilah Fresquez.  He testified that he returned the identification card to her, apologized for any inconvenience, and allowed her to proceed on her way.

Upon reentering his police unit, Deputy Padilla called dispatch and advised that the vehicle he stopped was not being driven by Delilah Fresquez, and that he had allowed the driver, Ms.

Romero, to leave. The New Mexico State Police, who were also looking for Delilah Fresquez, wanted to independently determine whether the driver of the vehicle stopped was Ms. Romero or Ms. Fresquez and wanted to know where the vehicle went. Deputy Padilla escorted the police officers to Ms. Romero's home. There, the State Police officers knocked on the door, requested Ms. Romero's identification, and after they verified her personal identification and the vehicle's identification, they left. Deputy Padilla contends he had no involvement in the follow-up visit to the Romero house other than escorting the officers to the property. Ms. Romero now contends that the initial stop and subsequent home visit violated her rights.

It is unclear why Plaintiffs name Sheriff Cordova in this cause of action. Sheriff Cordova denies any involvement whatsoever. He was not at the scene of either the stop or the subsequent home visit. There are no specific allegations about how he allegedly violated Ms. Romero's constitutional rights. It appears that he may have been named as a Defendant because he is Padilla's supervisor.

In § 1983 cases as well as in Bivens actions,[2] a supervisor cannot be named as a defendant solely on the basis of *respondeat superior*. Monell v. Dep't of Social Services of City of New York, 436 U.S. 658, 692, 694-95 (1978) (finding no vicarious liability for municipal "person" under 42 U.S.C. § 1983). If this was not clear before, the United States Supreme Court's decision in Ashcroft v. Iqbal, __ U.S. __ 129 S. Ct. 1937, 1948 (2009) eliminated any doubt. In Iqbal, the Supreme Court reiterated that "[b]ecause vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead each government-official defendant, through the official's own individual actions, has violated the Constitution." Id.

---

[2] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999 (1971).

Iqbal disagreed and argued that under a theory of supervisory liability, governmental officials could be liable for "knowledge and acquiescence in their subordinate's use of discriminatory criteria to make classification decisions among detainees." Id., at 1249. The Supreme Court rejected that argument, stating that, in § 1983 or Bivens actions, masters do not answer for the torts of their servants. "Absent vicarious liability, each government official, his or her title notwithstanding, is only liable for his or her own misconduct." Id.

Thus, it follows that Cordova cannot be named simply because he is Padilla's supervisor. For him to be liable under 42 U.S.C. § 1983, he must have personally participated in a constitutional violation.

Massive discovery is unnecessary with respect to Sheriff Cordova. The only individuals present at the pertinent time were Padilla, Romero and, subsequently, the State Police officers. Clearly, if Cordova was involved in that incident, Romero herself could submit an affidavit indicating actions allegedly taken by Cordova. The Court rejects Plaintiffs' request for substantial discovery to learn of Cordova's alleged participation in the Romero stop. However, the Court will allow limited written discovery on the issue of Sheriff Cordova's involvement, if any, into the alleged violations. *See* Maxey by Maxey v. Fulton, 890 F.2d 279, 282-3 (10th Cir. 1989)(narrowly tailored discovery allowed to cover only those facts needed to rule on the immunity claim).

The Court will authorize production of any incident report for Ms. Romero relating to the stop and will require production of any dispatch log with calls to or from Sheriff Cordova or Deputy Padilla on the night of the stop. To the extent that there are belt or video tapes from Deputy Padilla relating to the stop, they are to be produced.

**Incident Involving July 31, 2009 Stop**

The next event giving rise to the Complaint concerns a stop made by Deputy Padilla on July 31, 2009 of Emilio Romero, Hope Romero's brother. [Doc. 1, attachment.] Padilla testified that he stopped Mr. Romero for speeding on Highway 518. After checking Romero's identification and plate information, Padilla learned from police dispatch that Mr. Romero was on probation and in violation of his probation. Padilla arrested Mr. Romero for the probation violation and transported him to the Mora County Sheriff's Department for booking. At the Sheriff's Department, Deputy Padilla contacted the District Attorney on call, the duty judge, and the adult probation officer who faxed an order for Mr. Romero's arrest to Deputy Padilla. Mr. Romero claims that the stop and arrest violated his rights and that he was assaulted and battered by Sheriff Cordova.

As in the prior instance, Sheriff Cordova contends he had no involvement in the stop, arrest, booking or obtaining the arrest warrant relating to Mr. Romero. Sheriff Cordova states that he assisted Deputy Padilla with an inventory of Mr. Romero's vehicle subsequent to the arrest and was present in the Sheriff's Office when Deputy Padilla was booking Romero for the probation violation.

Cordova further contends he was not involved in the booking process and that Mr. Romero was never, at any time, inside the Sheriff's Office and denies any altercation between himself and Romero. Mr. Romero contends he was shoved by Sheriff Cordova during the booking process.

To respond to the motion for summary judgment and to challenge the validity of the arrest, Romero requests substantially broad information. As before, pursuant to Maxey-by-Maxey, the Court will authorize limited discovery of information that would be sufficient to allow for a response to Defendants' qualified immunity motion. The Court will authorize written discovery as sought in paragraph 3, page 11 of Romeros' Response to include "All Incident Reports, Narrative Reports, or other written materials pertaining to the search of Emilio Romero's vehicle" on the July 31, 2009 arrest as prepared by Deputy Padilla, Sheriff Cordova and any other employee of the Mora County

Sheriff's Office. The Court will similarly authorize discovery of information requested in paragraph 4 to include "All audio/visual recordings taken by any recording devices inside the squad cars used by Deputy Padilla and Sheriff Cordova" between 10:00 pm and 12:00 am on the July 31, 2009. The Court will authorize discovery of information in paragraph 6 to include "All written accounts of the contact on the 31st of July, 2009 and 1st of August, 2009 between Deputy Padilla and 'the Judge and District Attorney on call' mentioned in Deputy Padilla's Narrative Report pertaining to the arrest of Emilio Romero."

In addition, the Court authorizes discovery outlined in paragraph 8 of the response to include "All audio/visual recordings taken from any recording device inside the Mora County Sheriff's Office" on the July 31, 2009, between 10:00 pm and 12:00 am and between 1:00 a.m. and 3:00 pm on August 1, 2009. The Court will also authorize discovery of items listed in paragraph 7 to include "The names of 'the Judge and District Attorney on call' mentioned in Deputy Padilla's Narrative Report pertaining to the arrest of Emilio Romero" on July 31, 2009. The Court will further authorize written discovery of any record of communications between Deputy Padilla and Sheriff Cordova on July 31, 2009, and August 1, 2009, involving any mention of Hope Romero or Emilio Romero, as contained in paragraph 15 of Plaintiffs' Response.

Accordingly, Plaintiffs may serve ten interrogatories to Sheriff Cordova and ten to Deputy Padilla, limited to the subject matter listed above. Additionally, Plaintiffs may serve requests for production limited to those matters identified above.

The Court rejects the remainder of the proposed discovery sought by Plaintiffs in their Response relating to the July arrest of Emilio Romero.

**September 26, 2009 Incident**

The third incident at issue involves an alleged September 26, 2009 encounter occurring at 9:30 p.m. in Mora County. Sheriff Cordova contends he observed Emilio Romero recklessly drive away from Allsup's parking lot and onto State Road 518, almost causing an accident. Sheriff Cordova states he pulled Romero over for the purpose of giving him a driving citation. Romero never got out of the vehicle. Sheriff Cordova did not search or frisk him, but, instead, simply issued a traffic ticket for reckless driving. Sheriff Cordova asserts that Romero subsequently pled, entered a no-contest plea and received 90 days of unsupervised probation. Cordova denies incarcerating Romero for any matter relating to the traffic stop on September 26, 2009.

Plaintiffs dispute Sheriff Cordova's recitation and seek extensive discovery. The Court will only grant Plaintiffs discovery of the information sought in paragraph 2, page 17 of the Response, that is, "A legible copy of citation No. 3013010559797" and any related "'officer's notes' written by Sheriff Cordova" on September 26, 2009.

So, too, the Court authorizes production of information sought in paragraph 3 to include "All Incident Reports, Narrative Reports, Statements of Probable Cause, or other written materials pertaining to Emilio Romero" on September 26, 2009 "prepared by Deputy Padilla, Sheriff Cordova, and any other employee of the Mora County Sheriff's Office."

The Court will also authorize production of any "audio/visual recordings taken by any recording devices inside the squad car used by Sheriff Cordova at 9:00 pm" on September 26, 2009, relating to the stop of Mr. Romero as indicated in paragraph 4 of Plaintiffs' Response.

The Court further authorizes the release of any "audio/visual recordings taken from any recording device inside the Mora County Sheriff's Office" depicting Mr. Romero on September 26,

2009, as set forth in paragraph 5 of Plaintiffs' Response.  Romero may serve document requests limited to the information discussed above

The Court rejects all other discovery sought.  No depositions are authorized.  Plaintiffs will have five days, from entry of this Order, within which to serve either the interrogatories or discovery requests on Defendants as permitted herein.  Defendants will have fifteen days from receipt to provide answers, documents, or requested information.  Thereafter, Romeros will be required to file an amended response to the pending motion for summary judgment no later than September 15, 2010.

IT IS SO ORDERED.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge