IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HOPE ROMERO and EMILIO ROMERO,

    Plaintiffs,

vs.                                                                                  Case No. 6:10-CV-00298-JCH/LFG

ROY CORDOVA and EMERICK PADILLA,
in their individual capacities,

    Defendants.

### PLAINTIFFS' MOTION FOR ADDITIONAL LIMITED DISCOVERY

COME NOW Plaintiffs Hope and Emilio Romero, by and through their undersigned counsel, Alan H. Maestas, in support of Plaintiffs' Amended Response In Opposition to Defendants' Motion for Summary Judgment on Basis of Qualified Immunity (Doc. 31) and Defendants' incomplete and inadequate response to the Court's Order Granting Limited Discovery (Doc. 26), ask the Court to order Defendants to produce the following additional discovery.

### Basis Of Request

Pursuant to Fed. R. Civ. P. 56(f) and *Ben Ezra, Weinstein, & Co., Inc. v. America Online Inc.*, 206 F.3d 980, 987 (10th Cir. 2000), Plaintiffs request additional limited discovery in order to defeat Defendants' *prima facie* showing of entitlement to judgment based on qualified immunity. The additional limited discovery requested will assist the court in applying the objective qualified immunity standard, as articulated in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), to Plaintiffs' §1983 claims by resolving the two main issues associated with the qualified immunity affirmative defense: (1) whether Plaintiffs have stated a violation of a constitutional or

federal statutory right; and (2) if so, whether that right was clearly established, i.e. were the "contours of the right…sufficiently clear that a reasonable official would understand that what he is doing violates that right?" *Siegert v. Gilley*, 500 U.S. 226, 232 (1991) and *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). More particularly, an order granting the requested limited discovery requested would uncover the material facts in Plaintiffs' claim and allows the Court to compare such material facts to the facts from prior cases decided at the time Defendants acted. If such material facts correspond to those facts from prior cases where the courts have held that a violation of constitutional or federally protected right occurred, then Defendants shall not be afforded the protection of the affirmative defense of qualified immunity as the case law would have put Defendants on notice that their conduct was clearly unconstitutional. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

In the case at bar, the Court has already acted in its discretion, postponing the decision on summary judgment and allowed limited discovery. *See* Order Granting Limited Discovery (Doc. 26). In Plaintiffs' Amended Response in Opposition to Defendants' Motion for Summary Judgment On Basis of Qualified Immunity (Doc. 31), a number of material facts are disputed. However, due to the limited compliance of Defendants in following the Court's Order Granting Limited Discovery, a much larger number of disputed material facts await to be uncovered. Such facts are necessary for the Court to consider when applying the qualified immunity defense standard to Plaintiffs' §1983 claims by resolving the issue of the first prong: whether Plaintiffs have stated a violation of a constitutional or federally protected right. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

Because the constitutional rights alleged by Plaintiffs to have been violated are protected by the Fourth Amendment, Plaintiffs' claims are analyzed under the Fourth Amendment's

objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The Fourth Amendment's objective reasonableness standard is, in turn, informed by the totality of the circumstances. *Tennessee v. Garner*, 471 U.S. 1, 8-9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Furthermore, "[b]ecause the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application…its proper application requires careful attention to the facts and circumstances of each particular case." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). If Defendants had fully complied with the Court's Order Granting Limited Discovery, the careful attention to the facts and circumstances required by *Graham* might have been possible. For this reason, Defendants respectfully ask the Court to order the additional discovery requested by this motion.

## Facts Relevant to the Requested Relief

As stated above, the limited amount of discovery ordered by the court is necessary to determine whether a violation of a constitutionally protected right occurred. Such facts would allow the Court a better view of the facts and circumstances of the particular incidents described in Plaintiffs' Complaint. While Defendants have been able to successfully limit the discovery available to Plaintiffs through the affirmative defense of qualified immunity, the legal shield of qualified immunity does not grant Defendants an absolute right to immunity from deposition when Defendants, through either intentional or unintentional acts, failed to produce the limited discovery ordered by the Court. If such were the case, then every defendant in a §1983 claim would be able to thwart such claims by stating that they do not recall the incident in question and that no written records were kept.

The facts which were sought through the Court's Order necessarily pertained to Defendants' qualified immunity defense. As the following comparison illustrates, Defendants

lack of compliance with the Court's Order, either intentionally or unintentionally, completely frustrates the Court's purpose of allowing limited discovery in the first place.

***Comparison of Discovery Ordered by the Court to Discovery Provided by Defendants***

1. <u>Plaintiffs' Request for Production No. 2 to Roy Cordova</u>: Any dispatch log with calls to or from Sheriff Cordova or Deputy Padilla on the night of the stop.

    <u>Defendant Roy Cordova's Response</u>: "See copy of dispatch log document for June 9, 2009, attached hereto and identified as bate stamp no.000065."

This discovery is a call card information from Undersheriff Tim Marquez of the Mora County Sheriff's Department– not Deputy Padilla or Sheriff Cordova. It is unclear from the information provided whether this call card represents an intentional misrepresentation on the part of Defendants or the call card is the only piece of written material resembling a dispatch log with Deputy Padilla's name mentioned. In either circumstance, because the Defendants have not been able to provide Plaintiffs' with the discovery ordered by the Court, Plaintiffs respectfully request that the Court grant this motion and order additional discovery so that the underlying facts, which would have been available had the dispatch logs for Deputy Padilla and Sheriff Cordova been produced, be made known to Plaintiffs.

2. <u>Plaintiffs' Request for Production No. 3 to Roy Cordova</u>: Any belt or video tapes from Deputy Padilla relating to the stop.

    <u>Defendant Roy Cordova's Response</u>: "Sheriff Cordova has no knowledge or information to respond to this Request, other than what is provided in the report regarding Plaintiff Hope Romero, previously produced to Plaintiffs as part of Defendants' Rule 26(a)(1) Initial Disclosure documents, attached thereto and identified as bate stamp nos. MC 0000006 to MC 00000008."

The initial disclosure documents, (bates stamped nos. MC000006 to MC000008) are not a belt or video tape from Deputy Padilla, but instead consist of the Narrative Report written by Deputy Padilla and reviewed by Sheriff Cordova, in which Deputy Padilla notes in between sentences describing the approach of Hope Romero's vehicle and of noticing the presence of children in the rear seat of Hope Romero's vehicle, that Deputy Padilla, "placed the recording device on [his] belt not noticing that the battery was low." Because the Defendants have not been able to provide Plaintiffs with the discovery ordered by the Court, Plaintiffs respectfully request that the Court grant this motion and allow additional discovery so that the underlying facts, which would have been available had the audio or audio/visual recordings from Deputy Padilla been produced, be made known to Plaintiffs.

3.  <u>Plaintiffs' Request for Production No. 4 to Roy Cordova</u>:  All Incident Reports, Narrative Reports, or other written materials pertaining to the search of Emilio Romero's vehicle on July, 31, 2009.

    <u>Defendant Roy Cordova's Response</u>:  Defendant Cordova's Response: "Sheriff Cordova and the Mora County Sheriff's Department do not have any dispatch log document for this date related to Emilio Romero; it is believed that on the date requested herein, the New Mexico Department of Public Safety (State Police) was dispatching calls for local law enforcement. The Mora County dispatcher is not on a ("24/7") basis and, when the Mora County dispatcher is not on duty, all calls are dispatched by the New Mexico State Police. Plaintiffs' counsel may wish to make a public records request to the State Police for any dispatch log document(s) related to the above date."

It stretches the imagination to believe that there was no written account of the search and inventory of Emilio Romero's vehicle which resulted in the seizure and subsequent return of $3,000 in cash, according to Plaintiff Emilio Romero. Because the Defendants have not been able to provide Plaintiffs' with the discovery ordered by the Court, Plaintiffs respectfully request that the Court grant this motion and order additional discovery so that the underlying facts, which would have been available had the written materials pertaining to Sheriff Cordova's search and inventory of Emilio Romero's vehicle been produced, be made known to Plaintiffs.

    4.    <u>Plaintiffs' Request for Production No. 5 to Roy Cordova</u>: All audio/visual recordings taken by any recording devices inside the squad cars used by Deputy Padilla and Sheriff Cordova between 10:00 pm and 12:00 am on July 31, 2009. <u>Defendant Roy Cordova's Response</u>: "There are no audio or video recordings taken by any recording devices inside the squad cars used by Deputy Padilla and Sheriff Cordova relating to the stop and arrest of Emilio Romero on or about July 31, 2009."

Does this statement mean that there are no recording devices at all inside the squad cars used by Deputy Padilla and Sheriff Cordova or that there simply are not any recordings taken by Deputy Padilla and Sheriff Cordova? Because the Defendants have not been able to provide Plaintiffs' with the discovery ordered by the Court, Plaintiffs respectfully request that the Court grant this motion and order additional discovery so that the underlying facts, which would have been available had audio or audio/visual recordings been produced, be made known to Plaintiffs.

    5.    <u>Plaintiffs' Request for Production No. 6 to Roy Cordova</u>: All written accounts of the contact on July 31, 2009 and August 1, 2009 between Deputy Padilla and "the

Judge and District Attorney on call" mentioned in Deputy Padilla's Narrative Report pertaining to the arrest of Emilio Romero.

<u>Defendant Roy Cordova's Response</u>:   "Sheriff Cordova has no personal knowledge or information of any "written accounts" of the contact(s) on July 31, 2009 and August 1, 2009 between Deputy Padilla and "the Judge and District Attorney on call," outside of the documents previously produced as part of Defendants' Rule (26)(a)(1) Initial Disclosures documents, attached thereto and identified as bate stamp nos. MC 0000012 to MC-0000014."

These documents previously disclosed to Plaintiffs consist of Deputy Padilla's Narrative Report, in which he asserts that he contacted "the judge and district attorney on call", without naming them specifically.  Sheriff Cordova reviewed and approved these documents as evidenced by his signature.  If Plaintiffs could discover the names of aforementioned Judge and District Attorney on call, then Plaintiffs could ask those individuals for the particulars of why they were contacted and what they were told regarding the arrest of Emilio Romero.  Because the Defendants have not been able to provide Plaintiffs' with the discovery ordered by the Court, Plaintiffs respectfully request that the Court grant this motion and order additional discovery so that the underlying facts, which would have been available had a reliable written record been kept and then produced, be made known to Plaintiffs.

6. <u>Plaintiffs' Request for Production No. 7 to Roy Cordova</u>: All audio/visual recordings taken from any recording device inside the Mora County Sheriff's Office on July 31, 2009 between 10:00pm and 12:00am and between 1:00 am and 3:00 pm on August 1, 2009.

> Defendant Roy Cordova's Response: "There were no audio or visual recordings of events inside the Mora County Sheriff's Office for the dates and times requested. There are no video recording devices inside the Mora County Sheriff's Office."

Defendants' response begs the question, are there audio recording devices inside the Mora County Sheriff's Office, and if so, why were no audio recordings taken for the dates and times requested? If such audio recordings could be produced as requested, then Plaintiff Emilio Romero's claim of a violation of his constitutional rights within the office could easily be corroborated or disproved. Because the Defendants have not been able to provide Plaintiffs' with the discovery ordered by the Court, Plaintiffs respectfully request that the Court grant this motion and order additional discovery so that the underlying facts, which would have been available had audio or audio/visual recordings been produced, be made known to Plaintiffs.

7. Plaintiffs' Request for Production No. 8 to Roy Cordova: The names of the "Judge and District Attorney on call" mentioned in Deputy Padilla's Narrative Report pertaining to the arrest of Emilio Padilla on July 31, 2009.

    Defendant Roy Cordova's Response: "Sheriff Cordova has no information or knowledge regarding the "Judge and District Attorney on call" mentioned in Deputy Padilla's narrative report pertaining to the arrest of Plaintiff Emilio Romero on July 31, 2009."

This is despite the fact that Sheriff Cordova personally signed Deputy Padilla's narrative report pertaining to the arrest of Emilio Romero on July 31, 2009. Because the Defendants have not been able to provide Plaintiffs with the discovery ordered by the Court, Plaintiffs respectfully request that the Court grant this motion and order additional discovery so that the underlying

facts, which would have been available had a reliable written record been maintained and then produced, be made known to Plaintiffs.

    8.    <u>Plaintiffs' Request for Production No. 9 to Roy Cordova</u>:  Any record of communication between Deputy Padilla and Sheriff Cordova on July 31, 2009 and August 1, 2009 involving any mention of Hope Romero or Emilio Romero.

<u>Defendant Roy Cordova's Response</u>:  Sheriff Cordova had no conversations with Deputy Padilla regarding Plaintiff Hope Romero on July 31, 2009 and August 1, 2009 and, therefore, there is no record of any such communications.  Sheriff Cordova does not recall any communications with Deputy Padilla on July 31, 2009 and August 1, 2009 involving any mention of Plaintiff Emilio Romero.  Sheriff Cordova does not believe that there is a record of any communications, other than the documents previously produced as part of Defendants' Rule 26(a)(1) Initial Disclosure documents, attached thereto and identified as bate stamp nos. MC 0000012 to MC 0000014."

Defendant's response, a denial of a conversation taking place regarding one Plaintiff, Hope Romero, followed by a statement that Defendant does not recall any communications regarding the other Plaintiff, Emilio Romero, suggests by its conspicuous absence of denial that there very well may have been a conversation regarding the other Plaintiff, Emilio Romero. While this statement by Defendant may be entirely true, its calculated language at least implies that a record of this communication might exist.

9. <u>Plaintiffs' Request for Production No. 10 to Roy Cordova</u>: A legible copy of citation No. 3013010559797 and any related "officer notes" written by Sheriff Cordova on September 26, 2009.

<u>Defendant Roy Cordova's Response</u>: "Objection due to Defendants providing an incorrect citation number. If a more legible copy is found at the Magistrate Court, it will be immediately produced to Plaintiffs' counsel. Plaintiffs' counsel may also wish to inquire at Magistrate Court in order to obtain a more legible copy."

Plaintiffs contend that this objection is nonsensical. Plaintiffs contend furthermore that if a legible copy of the citation was produced by Defendants, the citation would show that Emilio Romero was given a citation for careless driving, not reckless driving as Defendants stated. Although this fact, taken alone, does not call into question a violation of Plaintiffs' constitutionally protected rights, because Plaintiffs have been able to show through a cursory search of NM Courts online – that Plaintiff Emilio Romero was in fact given a citation for careless driving on September 26, 2009, this fact does call into question the veracity of all the written accounts produced by the Mora County Sheriff's Department. This is also supported by Defendants' dispatch log document, bates stamped no. 0000066, which is from "M4", an unidentified member of the Mora County Sheriff's Department, and which states that a citation for careless driving was issued.

10. <u>Plaintiffs' Request for Production No. 12 to Roy Cordova</u>: Any audio/visual recordings taken by any recording devices inside the squad car used by Sheriff Cordova at 9:00 pm on September 26, 2009 relating to the stop of Mr. Romero.

> <u>Defendant Roy Cordova's Response</u>: "There are no responsive audio or visual recordings inside the squad car used by Sheriff Cordova relating to the stop of Mr. Romero."

Defendants' response ignores the request, by stating that there are no audio or visual recordings *inside* the squad car used by Sheriff Cordova. Plaintiffs' request was for recordings taken by *any recording devices inside* the squad car used by Sheriff Cordova. Again, while this is perhaps an issue of semantics, Plaintiffs are still left wondering if there were any recordings taken by any recording devices inside the squad car used by Sheriff Cordova, contrary to the Court's Order Granting Limited Discovery on that exact issue. If there were recordings, then perhaps such recordings would shed light on whether this incident was another in a long series of such incidents of police harassment as alleged to by Plaintiffs or if this were in fact a simple careless driving traffic stop. Because the Defendants have not been able to provide Plaintiffs' with the discovery ordered by the Court, Plaintiffs respectfully request that the Court grant this motion and order additional discovery so that the underlying facts, which would have been available had an audio or audio/visual recording been produced, be made known to Plaintiffs.

It should be noted to the Court that Plaintiffs' First Set of Requests for Production to Defendant Sheriff Roy Cordova were identical to Plaintiffs' First Set of Requests for Production to Defendant Deputy Americk Padilla. Similarly, Defendants' Responses and Objections to Plaintiffs' First Set of Reqests for Production were verbatim copies of each other.

Defendants were no more forthcoming in their answers to interrogatories than Defendants were to Plaintiffs' Request for Production. All of Defendants' answers were prefaced with the objection that Plaintiffs' act of including subparts within some interrogatory questions exceeded the amount of interrogatories allowed by court order. This objection lacks merit, as all subparts

in each interrogatory with subparts sought details about a common theme, were logically and factually subsumed within and necessarily related to the primary question. *Williams v. Board of County Commissioners*, 192 F.R.D. 698, 701 (D. Kan. 2000), *Kendall v. GES Exposition Servs.*, (174 F.R.D. 684, 685-686 (D.Nev.1997), *Nyfield v. Virgin Islands Tel. Corp.*, 200 F.R.D. 246, 247-48 (D.V.I.2001). No new factual details were revealed to Plaintiffs by Defendants, as Defendants usually averred to a document already produced as "speaking for itself". *See* Answer Nos. 1 (c, d, e, f, g), 2 (c, d), 4, (c, d, e, f, g), and 6 (Doc. 30).

## Legal Argument

The Court has already ordered limited discovery based on qualified immunity issues for three of the four incidents originally listed in Plaintiffs' Complaint: (1) the first incident on June 9, 2009 involving Plaintiff Hope Romero; (2) the second incident on July 31, 2009 involving Plaintiff Emilio Romero; and (3) the third incident on September 26, 2009 involving Plaintiff Emilio Romero. *See* Order Granting Limited Discovery and Setting Date to File an Amended Response (Document 26). Plaintiffs acted in compliance with the Court's Order and in good faith served discovery requests to Defendants through requests for production and interrogatories on August 18, 2010.

Of the additional discovery sought, Defendants were not able to produce a single audio or audio/visual recording from any of the three incidents mentioned above, due to either improper usage of a recording device or the lack of a recording device of any kind in the Mora County Sheriff's Office, the Mora County Sheriff's Department's vehicles, and the persons of the Mora County Sheriff's Office through the use of belt or shoulder mounted audio / visual recording devices that are in common use amongst law enforcement personnel in New Mexico and the rest of the nation. Due to the very limited amount of discovery made available, Plaintiffs have not

yet been able to ascertain the veracity of Defendants' contention and verify the lack of any recording device inside the Mora County Sheriff's Department vehicles and the Mora County Sheriff's Department's office itself. Simple requests for a call log from either Deputy Padilla or Sheriff Cordova were answered with the production of a call log from another employee of the Mora County Sheriff's Office not mentioned in the suit. Simple requests for a legible citation were answered with nonsensical objections and a copy of an already illegible copy of the citation requested. Moreover, Defendants produced forty-four (44) pages of documents to Plaintiffs that are not relevant to the case at bar. *See* bates stamped documents nos. MC0000015 to MC0000039 and nos. MC0000042 to MC0000062.

The Court has in its discretion ordered limited discovery on the issue of qualified immunity in order to resolve the factual issues surrounding the alleged violations of Plaintiffs' rights protected by the constitution and Defendants have through either intentional bad faith or an unintentional lack of accurate record keeping been unable to provide such facts as requested by Plaintiffs. Due to this lack of requested discovery, Plaintiffs respectfully request additional limited discovery, including depositions of Defendants, amongst others, to be granted in order that the Court have a clearer picture of the factual issues in the alleged incidents in order to determine the issue of qualified immunity.

Although the qualified immunity defense affords government officials certain latitude in the execution of their duties, it cannot act to deprive a plaintiff of a jury trial where there are material facts in dispute. In this case, there are issues of material fact which must be resolved by a jury on such critical issues as: whether Defendants deprived Plaintiffs of liberty and infringed upon their right to be free from unreasonable seizure, without due process and in violation of equal protection of the laws; whether Defendants deprived Plaintiffs of their right to be free from

unreasonable search; whether Defendants deprived Plaintiffs of their right to be free from use of excessive force; whether Defendants improperly deprived Plaintiffs of their right to procedural due process; and whether Defendants improperly deprived Plaintiffs of their right to equal protection under the laws.

As the analysis of qualified immunity affirmative defense is fact based, Plaintiffs are not, with Defendants' partial and unsatisfactory compliance with the Court's Order granting limited discovery, able to present to the Court all of the facts that the Court has allowed to be discovered so that the Court may properly decide the issue of qualified immunity. It is for this reason and the reasons listed above that Plaintiffs respectfully request the Court to order additional discovery and grant this motion by allowing the depositions of Sheriff Cordova, Deputy Padilla, Paul May, and New Mexico State Police Officer Joe Chavez.

## Prayer

The specific issues Plaintiffs seek to discover via deposition are as follows:

### A. Concerning the June 9, 2009 incident with Hope Romero:

1. In determining whether probable cause existed for the stop of Hope Romero's vehicle, Plaintiffs would seek information relating to the actual dispatch that Deputy Padilla received, including the time at which Deputy Padilla first received the dispatch, and any information related to the suspect's description and the description of her vehicle. Plaintiffs seek this information via deposition because Defendants have not been able to provide such information or have chosen not to provide such information when responding to Plaintiffs' requests for production and interrogatories. Such information would help establish whether or not a right protected by the constitution or federal statute had been violated.

2. In determining whether the amount of time in which Hope Romero stood handcuffed against Deputy Padilla's vehicle was reasonable, Plaintiffs would ask Deputy Padilla why he kept Plaintiff Hope Romero handcuffed outside of his squad car for half an hour before asking Hope Romero for her name. Likewise, Plaintiffs would ask Deputy Padilla why he never asked Hope Romero to present her driver's license or any other form of identification. As Deputy Padilla contends that he did check Plaintiff Hope Romero's driver's license, Plaintiffs would ask for the written record of such a check. In a similar vein, Plaintiffs would ask Deputy Padilla for the physical description of the suspect he was searching for, Ms. Lilah Fresquez, and whether Hope Romero matched in any way that description. Plaintiffs would additionally ask Deputy Padilla why, if Hope Romero presented either a flight risk or risk to the safety of Deputy Padilla, he did not insist that Mr. Romero wait inside the back of his squad car. As Deputy Padilla was not able to provide any audio recording from his belt-mounted audio recorder, Plaintiffs would ask Deputy Padilla what sort of training he had received at this time regarding the use of his belt-mounted audio recorder and whether he had followed any procedure regarding checking to verify if his belt-mounted audio recorder actually functioned before he went on duty.

3. In determining whether Sheriff Cordova played any role, either through direct action or failure to act, in terms of the incident with Hope Romero, Plaintiffs would ask Sheriff Cordova in a deposition if he was aware of Deputy Padilla's lack of training. Plaintiffs would additionally ask Sheriff Cordova for the Mora County Sheriff's Department's procedures on hiring new deputies and whether it was the policy of the department to only hire certified and trained law enforcement officers. If the Sheriff has a legal duty to act to prevent the misdeeds of his law enforcement subordinates, and the Sheriff's failure to act amounted to gross negligence or deliberate indifference of Plaintiff Hope Romero's rights, and if Plaintiff Hope Romero is

successful in proving a claim that her constitutional rights were violated, then Sheriff Cordova would be held liable for such violations.

4. Plaintiff would additionally seek the deposition of Paul May, a civilian ride-along who participated in the June 9, 2009 arrest of Hope Romero. Mr. May, who was acting under the "color of law" according to the sworn Affidavit of Hope Romero, participated in the conversational banter with Deputy Padilla regarding the threats of calling C.Y.F.D. to take Hope Romero's children away. As there is a current disparity between Deputy Padilla's and Hope Romero's version of events, Mr. May might be able to provide more clarity and support Plaintiff Hope Romero's version of events in which there are clear violations of her constitutional rights.

5. Plaintiff would additionally seek the deposition of New Mexico State Trooper Joe Chavez, the officer who responded to Hope Romero's home on the night of June 9, 2009. Such deposition would seek to discover from another law enforcement officer an accurate description of Hope Romero in regards to her potential as a flight risk or a threat to the officer. Such deposition would also seek to discover the reason why officer Joe Chavez, like Deputy Padilla, did not bother to ask Hope Romero for her driver's license or any other form of official identification. Such facts, were they to be disclosed, would shed light on the probable cause in Plaintiff Hope Romero's arrest, a key support of the underlying argument that there was a violation of Hope Romero's rights as protected by the constitution.

**B. Concerning the incident with Plaintiff Emilio Romero on July 31, 2009:**

1. Plaintiffs seek the deposition of Deputy Padilla to determine how exactly he was able to determine the parole conditions of Emilio Romero on the evening in question and why Deputy Padilla was unable to produce any written account of such a determination to Plaintiffs, such as through a NCIC access log.

2. Plaintiffs seek the deposition of Sheriff Cordova to determine what role he played, if any, in the determination of Emilio Romero's conditions of parole on the evening in question and to explain why Deputy Padilla was unable to produce any written account of such a determination to Plaintiffs, such as through a NCIC log.

3. Plaintiffs seek the deposition of Deputy Padilla to determine exactly what audio recording devices are installed inside the Mora County Sheriff's Department office and why there was no record made from the evening in question.

4. Plaintiffs seek the deposition of Sheriff Cordova to determine exactly what audio recording devices are installed inside the Mora County Sheriff's Department office and why there was no record made from the evening in question.

WHEREFORE, Plaintiffs respectfully request that the Court deny Defendants' Motion for Summary Judgment on Basis of Qualified Immunity (Doc. 31) and to allow Plaintiffs' additional discovery as outlined above or in the alternative to reopen discovery.

Respectfully submitted,

ALAN MAESTAS LAW OFFICE, P.C.


/s/ Alan H. Maestas
ALAN H. MAESTAS
224 Cruz Alta Road, Suite H
Taos, New Mexico 87571
Telephone: (575) 737-0509
Facsimile: (575) 758-2497
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing
was served via electronic transmission to:

Carlos M. Quinones, Esq.
QUINONES LAW FIRM
1532 B Paseo de Peralta
Santa Fe, New Mexico 87501
Email: quinoneslaw@cybermesa.com
*Attorney for Defendants*

on this 20th day of September, 2010.


/s/ Alan H. Maestas
Alan H. Maestas